IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARLTON FRANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2:14-CV-64-TMH-SRW |
| OFFICER C. BASKIN, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## ANSWER AND SPECIAL REPORT

COMES NOW the Defendant, **Officer Chermane Baskin,** by and through undersigned counsel, and in accordance with this Honorable Court's February 18, 2014 Order (Doc. 5), offer the following Answer and Special Report.

## PARTIES

1. The Plaintiff, Carlton Frank, is an Alabama Department of Corrections ("ADOC") inmate currently housed at Elmore Correctional Facility, but at times relevant to the complaint, was housed at Bullock Correctional Facility.

2. Defendant Chermane Baskin is employed by the ADOC as a Correctional Officer at Bullock Correctional Facility.

3. Defendant Dominic Whitely is employed by the ADOC as a Correctional Sergeant at Bullock Correctional Facility and is represented in this matter by separate counsel.

4. Defendant Clatys Jenkins is employed by the ADOC as a Correctional Captain at Bullock Correctional Facility and is represented in this matter by separate counsel.

## EXHIBITS

EXHIBIT 1 – Affidavit of Officer Baskin.

EXHIBIT 2 – Affidavit of Capt. Jenkins

EXHIBIT 3 – Affidavit of Sgt. Whitley

EXHIBIT 4 – Certified Documents

EXHIBIT 5 – ADOC Administrative Regulation 318, 336, and 454

## PLAINTIFF'S CLAIMS

Plaintiff alleges that Officer Baskin stripped searched him several times a day and on each occasion, Officer Baskin would grope inmate Frank's penis. (Doc. 1, p. 2). Plaintiff states, "I permitted him to give me oral sex." (Doc. 1, p. 3). Plaintiff claims that when Baskin became angry, Officer Baskin would threaten Plaintiff with disciplinary action, violence, and claim that he would make it difficult for him to get paroled. (Doc. 1, p. 3).

Inmate Frank alleges that Officer Baskin would bring him cell phones and ask Frank to sell the cell phones for him. (Doc. 1, p. 3). Plaintiff alleges that on October 31, 2013, Officer Baskin called Plaintiff to the shift office and asked if he (Plaintiff) was going to buy a cell phone from him (Officer Baskin) and if Plaintiff was going to sell cell phones to other inmates for him (Officer Baskin). (Doc. 1, p. 4). Plaintiff stated that he refused to participate in the cell phone scheme. Plaintiff stated that later in the day, Officer Baskin and Sgt. Whitley

called him to the shift office and that he again refused to sell cell phones and that when he attempted to leave the shift office, Sgt. Whitley pushed him back and Officer Baskin assaulted him by punching him several times in the face and stomach, choking him, and kicking him in the side and back. (Doc. 1, p. 4). Plaintiff further alleges that Officer Baskin has repeatedly told staff and other inmates that he would get inmate Frank back for turning Officer Baskin in. (Doc. 1, p. 4).

Plaintiff seeks to have criminal charges brought against Officer Baskin and the other Defendants and seeks fifty thousand dollars in damages.

## DEFENDANT'S RESPONSE

1.   The Defendant denies that he violated the Plaintiff's constitutional rights.

2.   The Defendant denies each and every material allegation not specifically admitted herein and demands strict proof thereof.

3.   The Plaintiff has failed to state a claim upon which relief may be granted.

4.   The Defendant is immune from suit under the Eleventh Amendment to the United States Constitution.

5.   The Defendant is immune from suit due to qualified immunity.

## STATEMENT OF FACTS

For factual background, on June 27, 2013, Officer Chermane Baskin was assigned as Dorm Rover for E1 and E2 at Bullock Correctional Facility. (Ex. 4, p. 8; Ex. 1, p. 2). At 7:15 p.m., Officer Baskin observed inmate Frank grab a cell phone charger and battery from the television area electrical outlet. *Id.* Officer Baskin ordered Plaintiff to give him the cell phone charger and battery.

*Id*.  Inmate Frank did not comply and turned and ran towards the back of the dormitory and threw the cell phone charger and battery. *Id*.  Officer Baskin asked Frank why he ran and he replied, "This shit cost too much to let you get it like that."  Plaintiff was disciplined for his actions. *Id*.

On October 31, 2013, Officer Baskin observed inmate Frank behaving in a suspicious manner; nervous and looking around as if he had something to hide. (Ex. 1, p. 2).  Officer Baskin approached Plaintiff and ordered him to submit to a strip search. *Id*. Inmate Frank refused and Officer Baskin escorted him to the Shift Commander's Officer. (Ex. 1, p. 3).

Officer Baskin reported to Sgt. Dominic Whitley that Plaintiff had refused to submit to a strip search.  (Ex. 1, p. 3).   Sgt. Whitley instructed the female clerk, Ms. Sparks, to step outside so to protect Plaintiff's privacy. (Ex. 1, p. 3; Ex. 3, p. 2).  After Ms. Sparks exited the office, Sgt. Whitley ordered Plaintiff to strip. (Ex. 1, p. 3; Ex. 3, p. 2).  Plaintiff pulled a cell phone out of his clothing and Officer Baskin reached out his hand to collect the phone. (Ex. 1, p. 3; Ex. 3, p. 2).  Plaintiff reached around Officer Baskin and handed the phone to Sgt. Whitley. (Ex. 3, p. 2).  Inmate Frank started cursing at Officer Baskin and calling him names. (Ex. 1, p. 3; Ex. 3, p. 2).  Plaintiff and Officer Baskin were in each other's face cursing and Sgt. Whitley ordered Officer Baskin to step back and he did not comply. Sgt. Whitley stepped between Plaintiff and Officer Baskin and ordered Officer Baskin to leave the office. (Ex. 1, p. 3; Ex. 3, p. 2). Officer Baskin did not exit the office, but rather stopped at the refrigerator next to the door. (Ex. 1, p. 3; Ex. 3, p. 2). Sgt. Whitley did not leave the room or

4

shut the Plaintiff in the room with Officer Baskin. (Ex. 3, p. 2). Sgt. Whitley instructed the Plaintiff to get dressed. After he finished dressing, Plaintiff informed Sgt. Whitley that he had problems with Officer Baskin in the past, but did not elaborate. (Ex. 3, p. 2). Officer Baskin pushed inmate Frank to the desk. (Ex. 1, p. 3; Ex. 3, p. 2). Officer Baskin did not punch Plaintiff in the face or stomach, did not choke him, and did not kick him in the side or back. (Ex. 1, p 3).

It did not appear that Officer Baskin intended to harm Plaintiff; he just lost his temper. (Ex. 3, p. 2). Plaintiff was escorted by Lt. Harvey Ruffin to the Health Care Unit for a body chart where he was examined by Nurse Lorraine Coats, who noted no injury. (Ex. 4, p. 2, 4). Sgt. Whitley pulled Officer Baskin out of the Shift Office and reassigned him to the perimeter. (Ex. 1, p. 3).

Any strip search of inmate Frank was during the performance of Officer Baskin's job while searching for contraband and always done in the presence of other officers and/or other inmates; never alone. (Ex. 1, p. 1). Officer Baskin has never touched Plaintiff inappropriately, grabbed his penis, nor has he had oral sex with inmate Frank. (Ex. 1, p. 1). Officer Baskin has never forced inmate Frank to perform a sexual act. (Ex. 1, p. 2). Officer Baskin has never threatened inmate Frank with disciplinary action though he has issued disciplinary action pursuant to Administrative Regulation 403. (Ex. 1, p. 2).

Officer Baskin has never brought a cellular phone to or asked inmate Frank to sell cell phones for him. (Ex. 1, p. 2).

# ARGUMENT

With liberal construction, the undersigned has discerned four themes which Plaintiff has attempted to state in his complaint against Defendant Officer Baskin. The Plaintiff has alleged that he has suffered from sexual harassment; verbal threats; and excessive force in violation of the Eighth Amendment. Plaintiff further appears to complain the Defendants should be charged with various federal and state criminal charges.

## I.    Sexual Harassment

Plaintiff states, "Baskin's (sic) kept shaking me down asking me to (get naked) several times a day. On each occasion he was touching and gropeing (sic) my penis for extended periods of time." (Doc. 1, p. 2) Plaintiff further states, "do (sic) to threats in regard to my freedom I permitted him to give me oral sex…" (Doc. 1, p. 3).

> In its decision in *Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir.2006), the Eleventh Circuit joined other circuits in holding that "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment."
>
> There are two components to a sexual abuse claim: (1) the injury must be objectively, sufficiently serious (more than de minimis); and (2) the corrections officer must have a sufficiently culpable state of mind. *Boxer,* 437 F.3d at 1111. Cases where the injury requirement has been met involve some type of intrusive sexual contact—acts beyond mere touching, and allegations of pain. *Schwenk v. Hartford,* 204 F.3d 1187, 1198 (9th Cir.2000) (demand for oral sex accompanied by grabbing and pushing inmate up against bars); *Smith v. Cochran,* 339 F.3d 1205, 1208 (10th Cir.2003) (forced oral sex and sexual intercourse); *Little v. Walker,* 552 F.2d 193, 197 (7th Cir.1977) (rape); *Styles v. McGinnis,* Case No. 0–1415, 2001 W L 1667273, *2 (6th Cir. Dec. 26, 2001)

> (forced rectal examination); *Liner v. Goord,* 196 F.3d 132, 135 (2nd Cir.1999) (intrusive body cavity search). Otherwise, courts have found no constitutional violation. For example, there was no Eighth Amendment violation where an inmate complained about sexual comments by a female officer, who also pressed herself up against him in a sexual manner, because the inmate did not allege any pain or injury. *Boddie v. Schnieder,* 105 F.3d 857, 861 (2nd Cir.1997). *See also Freitas v. Ault,* 109 F.3d 1335, 1338 (8th Cir.1997) (sexual harassment to be actionable "must involve pain of some type to constitute an injury").

*Moton v. Walker*, 2012 WL 380134 (M.D. Fla. 2012).

Initially, the Court should note that Officer Baskin vehemently denies he had any sexual contact with Plaintiff.  Plaintiff as shown alleges that Officer Baskin <u>asked</u> him to get naked.  He did not state that he was so ordered.  The Plaintiff also alleges that Officer Baskin touched and groped his penis apparently without protest.  Finally, Plaintiff alleges that he <u>permitted</u> Officer Baskin to perform oral sex on him, albeit, he did so because Officer Baskin allegedly made threats against his future liberty.  This lawsuit is the first time Plaintiff has made these allegations.

Plaintiff's sexual abuse claim fails because he does not allege that he suffered pain.  Further, Plaintiff states he was asked to get naked and does not in any way suggest he protested when his penis was allegedly touched.  Plaintiff further states he permitted Officer Baskin to perform oral sex on him.  Though Plaintiff's allegations are appalling, they do not constitute a cause of action because Plaintiff wholly fails to make any allegation of pain or for that matter, he does not allege force.  Plaintiff simply fails to state a sexual abuse cause of action.

## II.  Plaintiff has no cognizable interest in the desired prosecution of Officer Baskin.

On page 5 of Plaintiff's complaint he requests this case be turned over to the district attorney and the Justice Department for investigation. He cites various state criminal statutes and Title 18 of the United States Code. In *Vineyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) the Court found there is no constitutional right to an investigation following a violent incident upon which the Plaintiff raised a § 1983 claim. In *Sanford v. Zanders*, the Court noted:

> Furthermore, "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another." *Otero v. U.S. Att'y Gen.,* 832 F.2d 141, 141 (11th Cir.1987); *see also Sattler v. Johnson,* 857 F.2d 224, 227 (4th Cir.1988) (holding that there is no constitutional right for a member of the public, as a victim, to have defendants, including state government officials, criminally prosecuted).

*Sanford v. Zanders,* 2012 WL 693484 (S.D. Ga. 2012).

## III.  Threats

Plaintiff claims Officer Baskin threatened to initiate disciplinary action against him and stated that he would make it difficult for Plaintiff to obtain parole. Officer Baskin allegedly told others that he would get Plaintiff for reporting him. In *McFadden v. Lucas,* 713 F.2d 143 at 146 (5th Cir. 1983), the Court held, "...as a rule mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." In *Stacy v. Ford* 554 F Supp 8 (ND Ga., 1982) the District Court held that verbal abuse or threats are insufficient grounds for relief under § 1983 and cited *Collins v.*

*Lundy*, 603 F2d 825 (10th Cir. 1979) and *Ellingburg v. Lucas*, 518 F2d 1196 (8th Cir. 1975).

## IV.    Officer Baskin did not use excessive force against Plaintiff.

Plaintiff alleges on page 4 of his complaint that "on October 31, 2013 Officer Baskin called me to the shift office..."  Plaintiff then states that later that day, Officer Baskin and Sgt. Whitley told him to come to the shift office. According to Plaintiff, Ms. Sparks and Lt. Ruffin were asked to leave by Officer Baskin and Sgt. Whitley.  Plaintiff claims Officer Baskin and Sgt. Whitley wanted Plaintiff to sell cell phones to inmates for them.  Plaintiff claims he tried to leave the shift office, but Officer Baskin and Sgt. Whitley locked the door and pushed him back.  Plaintiff further alleges that Officer Baskin began assaulting him by punching him several times in the face and stomach, choking him, and kicking him in the side and in the back.  Plaintiff claims he went to lockup with no medical attention. (Doc. 1, p. 4).

Officer Baskin testified under oath as follows:

> On October 31, 2013, I observed Inmate Frank acting in a suspicious manner; nervous and looking around as if he had something to hide, I went up to Inmate Frank and instructed him to submit to a strip search. Inmate Frank refused and I escorted him to my supervisors who were in the Shift Commander's Office. When we got to the Shift Commander's office, Lt. Harvey Ruffin was leaving so I reported to Sgt. Dominic Whitley that Inmate Frank had refused to submit to a strip search, Sergeant Whitley instructed the female clerk to stand outside the Shift Commander's Office door and ordered Inmate Frank to "strip." Inmate Frank reached inside his pants and pulled out a cellular telephone and handed it to Sergeant Whitley and proceeded to strip; no other contraband was found. Inmate Frank was furious because he was being strip searched and

because his cellular telephone was being confiscated. Inmate Frank started cursing and then he started cursing me directly and calling me names; the same as he did during the June 27, 2013 incident. I got up in Inmate Frank's face and cursed him back. Sergeant Whitley ordered me to step back but I was too engaged with the verbal exchange with Inmate Frank. Sergeant Whitley then got between us and told me to exit the Shift Commander's Office, inmate Frank was still calling me names and cussing me so I did not exit the Shift Commander's Office as instructed. Instead, I went up to Inmate Frank and pushed him back onto the desk. Inmate Frank received no injuries from my shove. Sergeant Whitley grabbed me and took me out of the Shift Commander's Office. Sergeant Whitley then told me to get my stuff and report to the perimeter truck because he was reassigning me because of my actions. I left the facility and relieved the officer in the perimeter vehicle.

(Ex. 1, p. 2-3).

Officer Baskin states that Plaintiff is lying about Officer Baskin wanting Plaintiff to sell cell phones to other inmates. Most notably, Plaintiff states that after the alleged beating, he received no medical attention.  Exhibit 4 at page 4 is a body chart that shows Plaintiff was seen by LPN Lorraine Coates at 2:18 p.m. and it reads in pertinent part, "no injuries noted to inmate at present. See body chart for tatooes. ____ body chart per DOC request."  It should be noted that in the subjective entry into the body chart, the Plaintiff did not say that he was assaulted; he simply stated, "I not (sic) did nothing."

## V.   Plaintiff has not stated sufficient injury to state a claim of excessive force.

Claims of excessive force against inmates are governed by the Eighth Amendment's proscription of cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  To establish an Eighth Amendment claim

of excessive force, the Plaintiff must prove that "'force was applied ... maliciously and sadistically for the very purpose of causing harm.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The "core judicial inquiry" in such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

In addition to defining the mental state required, *Hudson* and *Whitley* outline five distinct factors relevant to ascertaining whether force was used " maliciously and sadistically for the very purpose of causing harm"; (1) "the extent of the injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of the staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell*, 169 F.3d at 1375 (citing *Whitley*, 475 U.S. at 321; *Hudson*, 503 U.S. at 7).

In the instant case, the Defendant lost his temper. The need for force was minimal as Officer Baskin and inmate Frank were face to face in an angry cursing match. The force used was a simple push. Sgt. Whitley grabbed Officer Baskin and pulled him away from Plaintiff, thus appropriately tempering the force and preventing escalation and injury. Contrary to Plaintiff's assertion that he did not receive medical attention, he was taken to the HCU for examination and no injury was noted. Quite frankly, all that happened was a push.

Plaintiff's non-injury is one upon which he cannot base a claim. To state a claim, an inmate's injuries need not be significant, but must be more than *de minimus*. *Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir. 1999); modified in part by *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000). To satisfy the injury requirement, an inmate need not show permanent injury, but must "offer some evidence of injury beyond a minimal one." *Bennett v. Parker,* 898 F.2d 1530, 1533 (11th Cir. 1990).

Injuries more severe than this have consistently been found not sufficiently serious to state an Eighth Amendment claim. *Bennett,* 898 F.2d. at 1533 (inmate's allegation of being struck in the head with a night stick did not state sufficient injury); *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987) (inmate's allegation he was pinned against a wall by the neck with a riot baton did not state sufficient injury); *Williams v. Cash*, 836 F.2d 1318 (11th Cir. 1986) (inmate's allegation of broken elbow insufficient); *Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986) (inmate's allegations of bleeding after being struck in head, face, arms, legs, and side insufficient); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997) (sore ear lasting three days insufficient); *Lassan v. City of Orange Beach*, 2000 W.L. 1844683 (S.D. Ala. 2000) (broken bone and digestive problems insufficient). Because Plaintiff's injury is minimal, he has not stated an Eighth Amendment claim and the Defendants are entitled to summary judgment.

In *Bennett v. Parker,* 898 F2d 1530 at 1532, the Eleventh Circuit held, "The existence of material disputed facts will not defeat summary judgment in

favor of a public official, however, when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial.'"  In *Bennett, supra* at 1533, the Court recalled that in *Brown v. Smith*, 813 F2d 1187 (11th Cir. 1987), it disregarded plaintiff's affidavit which contained only a conclusory allegation of serious injury because there was no other supporting evidence.

In *Bennett v. Parker,* 898 F2d 1530 at 1534 (11th Cir. 1990), the Court held:

> As in *Brown*, Bennett's claim of serious injury is only a conclusory allegation, unsupported by any physical evidence, medical records, or corroborative testimony, and we therefore discount it.  If Jackson and Cooper struck Bennett, the injury was minimal.
>
> When faced with a motion for summary judgment based on a defense of qualified immunity, the district courts should first focus on whether the plaintiff has established a constitutional violation before determining whether material issues of fact are present.  No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation.

Unless Plaintiff can offer medical records, physical evidence, or corroborative testimony to support his allegations, this Court should discount Plaintiff's claims.  Plaintiff can show no evidence of physical injury which is an essential element of his claim and all other facts become immaterial as Plaintiff fails to establish a *prima facie* claim due to lack of injury.  *See Johnson v. Breeden*, 280 F3d 1308, 1321 (11th Cir. 2002), for the proposition that even an officer acting with specific malevolent intent to cause harm must inflict more than *de minimus* injury to violate the Cruel and Unusual Punishment Clause of

the Eight Amendment; *See McReynolds v. Alabama Department of Youth Services* 2008 WL 1927373 at 3 (USDC M.D. Ala.) wherein Judge Mark Fuller indicated he would have followed *Bennett v. Parker*, *supra*, but for a factual distinction.

As the U.S. Supreme Court stated in *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. ('Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights')." (Citations omitted.)

**VI.    Defendant is immune from suit.**

This case should also be dismissed because the Defendant is immune from suit.  The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  The Amendment therefore not only bars suits against a state by citizens of another state, but also bars suits against a state by that state's own citizenry.  *See Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355 (1974) and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890).  The Eleventh Amendment also prohibits suit against state officials and employees where the state is the real, substantial party in interest.  *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L.Ed.2d 67 (1984).  "For example, if a lawsuit seeks to order the state officer to pay

funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). This suit is in reality a suit against the State; thus, the Defendant should be dismissed based on immunity.

In addition, the Defendant is protected by qualified immunity. As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998) (quoting *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)). *Wilson, supra* (holding that the marshal, wardens, and corrections officer were protected by qualified immunity); *see also Pinkney v. Davis*, 952 F. Supp. 1561 (M.D. Ala. 1997) (holding that wardens, deputy warden, and other prison officials were entitled to qualified immunity). The Eleventh Circuit has held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Wilson*, 163 F.3d at 1295, *quoting Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878 (1979). The Defendant has not violated Plaintiff's clearly established rights, thus, he is entitled to qualified immunity.

## <u>CONCLUSION</u>

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law.   WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.


Respectfully submitted,

LUTHER STRANGE
Attorney General


s/ *Jeffery H. Long*
Jeffery H. Long
Assistant Attorney General


ADDRESS OF COUNSEL:

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
jlong@ago.state.al.us

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 16th day of April, 2014, electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of same to the following CM/ECF participants:

Katherine S. Jessip
Assistant General Counsel
Counsel for Jenkins and Whitley

I further certify that I have mailed a copy of the foregoing to the following non-CM/ECF participants:

Carlton Frank
AIS 192218
Elmore Correctional Facility
3520 Marion Spillway Rd.
Elmore, AL 36025

s/ *Jeffery H. Long*
Jeffery H. Long
Assistant Attorney General